UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

J.C., on behalf of a minor, A.C.,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. C23-5605-BAT

**ORDER AFFIRMING AND DISMISSING WITH PREJUDICE**

  Plaintiff seeks review of the denial of her application for Supplemental Security Income. She contends the ALJ erred by misevaluating a medical opinion and lay witness testimony. Dkt. 17. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

  Plaintiff, born in 2010, Tr. 23, has an individualized education plan (IEP), receives special education support services, Tr. 25, and has no past relevant work. Tr. 23. On February 24, 2020, Plaintiff applied for benefits, alleging disability as of her birthdate in April 2010. Tr. 22, 193-99. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. Tr. 89-91, 98-100, 104-06. After the ALJ conducted a hearing on June 22, 2022, the ALJ issued a decision on July 27, 2022, finding Plaintiff not disabled. Tr. 22-27, 33-

66. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-3.

## THREE-STEP PROCESS FOR EVALUATING CHILD DISABILITY

To qualify for SSI benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The regulations set forth a three-step process to determine whether a claimant satisfies the above criteria. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." 20 C.F.R. § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments." 20 C.F.R. § 416.924(c)-(d).

If the ALJ finds the child's impairments or combination thereof does not meet or equal a listing, the ALJ must determine whether the impairments or combination thereof equals a listing. 20 C.F.R. § 416.926(a). The ALJ's functional equivalence assessment requires evaluation of the child's functioning in six "domains."  These six domains, which are designed "to capture all of what a child can or cannot do," include: (1) Acquiring and using information; (2) Attending and completing tasks; (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for self; and (6) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment functionally equals a listed impairment if the child's condition results in

"marked" limitations in two domains, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).

An impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).  An "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

**DISCUSSION**

Plaintiff argues the ALJ misevaluated the medical opinion of treating child psychiatrist, Dr. Brian Que, and lay witness testimony from Plaintiff's father and grandmother. Dkt. 11 at 1; Tr. 663-65, 690-93 (Dr. Que's opinion); Tr. 40-44 (father's testimony); Tr. 45-50 (grandmother's testimony). The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

**A.   "Whole Child" Analysis**

Plaintiff contends the ALJ did not evaluate her claim using the "whole child" approach. Dkt. 11 at 8-10. In evaluating functional equivalence, the Commissioner engages in a "whole child" analysis.  SSR 09-1p, 2009 WL 396031 (effective February 17, 2009). An ALJ must consider how the child functions every day and in all settings by evaluating the activities a child does throughout the day at home, at school, and in the community. *Id*. at 2. To that end, the ALJ will consider which activities a child is able or unable to perform; which activities are limited or restricted; where the child has difficulty with activities – at home, in childcare, at school, or in the community; whether the child has difficulty independently initiating, sustaining, or completing activities; the kind of help the child needs; and whether the child needs a structured or supportive setting. *Id*. After determining how the child functions in all settings, the domains are used to determine how and to what degree the child is limited in order to determine whether

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 3

1  the child is "disabled" as defined in the Act. *Id*. at *7. No set formula dictates the considerations
2  in each case. *Id*.
3      Plaintiff contends the ALJ erred by rejecting "the opinion of a treating physician based on
4  IEP reports by teachers who had limited in-person interaction with [her, because s]chools shut
5  down in March 2020 and [she] was homeschooled by her grandmother in 2021." Dkt. 11 at 8.
6  Plaintiff further argues the ALJ improperly rejected testimony from her father and failed to
7  address testimony from her grandmother that discussed "significant limitations" in her
8  functioning domains. Dkt. 11 at 10.
9      Contrary to Plaintiff's argument, the ALJ considered and discussed the reasons for the
10 consideration they gave to the statements from Plaintiff's treating physician and father, as well as
11 other evidence from all areas of Plaintiff's life, including her home life, school, and medical
12 office visits. Tr. 25-27. Although the ALJ gave more weight to some evidence than to other
13 evidence, the record does not show the ALJ failed to consider the "whole child." As discussed
14 throughout this decision, the ALJ adequately considered the "whole child" in evaluating
15 Plaintiff's functioning.

16     **B. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence.**

17     Dr. Que, a treating psychologist, completed "Child Domain Statement" forms in March
18 2021 and March 2022. Tr. 663-65, 690-93. In 2021, he assessed marked or extreme limitations
19 in five of the six functional domains. Tr. 663-65. And in 2022, he assessed marked limitations in
20 three of the six domains and extreme limitations in the remaining domains. Tr. 690-93. The ALJ
21 found Dr. Que's opinions unpersuasive for several reasons. Tr. 26-27.
22     Under regulations applicable to this case, the ALJ is required to articulate the
23 persuasiveness of each medical opinion, specifically with respect to whether the opinions are
   supported and consistent with the record. *See* 20 C.F.R. § 416.920c(a)-(c). An ALJ's

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 4

consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

First, the ALJ found the medical records do not support the overall severity of the opined limitations. Tr. 26. The more relevant the objective medical evidence and supporting explanations are supporting a medical opinion, the more persuasive it will be. 20 C.F.R. § 416.920c(c)(1)-(2). The ALJ cited medical records that described "mostly normal cognitive and social abilities, without a consistent description of severe functional deficits." Tr. 26 (citing Tr. 678-79 (in December 2020, Plaintiff exhibited increased distractibility at home and her academic performance suffered – primary care provider "slightly" increased ADHD medication and she "did not require intensive follow-up services, strongly suggesting her medication program effectively improved her symptom control after the adjustment."); Tr. 676 (in February 2021, "during a routine well-child visit, she exhibited intact social and cognitive abilities, strongly suggesting her condition remained stable. She was described as 'friendly and cooperative with good behavioral control.'"); Tr. 724-66 (most recent records do not describe severe functional limitations while Plaintiff maintained medication program)). Substantial evidence thus supports the ALJ's finding regarding supportability.

Second, as to consistency, the ALJ found Dr. Que's opinions inconsistent with "lengthy academic reports" showing largely normal presentation across social and academic areas. Tr. 25-26. The more consistent a medical opinion is with other evidence from other medical and nonmedical sources in the record, the more persuasive the opinion will be. 20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ noted Dr. Que reported Plaintiff had marked and extreme limitations in her ability to interact with others, care for herself, or attend and complete tasks — for example, an

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 5

activity that normally took one minute would take her approximately twenty minutes to complete, Tr. 663-65, 690-93, but that is not consistent with IEP reports and Plaintiff's presentation in school settings. Tr. 25-26. The ALJ cited a March 2019-May 2020 IEP, which reported that Plaintiff ate and talked with friends at lunch, worked in small groups, communicated effectively with teachers, was comfortable being with others, and was "very friendly." Tr. 524. The IEP also noted Plaintiff "is bright and is academically at or above standards across areas. She is loving, thoughtful, and independent if it is something she likes. She is creative, loves art, writing, and telling stories." Tr. 525. The ALJ also cited a 2021 IEP, which reported Plaintiff "does not have behaviors that impede her learning or that of others," and indicated Plaintiff did not require special in-class assistance, accommodations, intensive special education services, or full-time special classroom settings. Tr. 540-48. Further, the ALJ observed that, after Plaintiff was forced to maintain full-time virtual learning due to the Pandemic, follow-up IEP reports did not include descriptions of significant academic, behavioral, or social deficits. Tr. 699-701.

Dr. Que also reported Plaintiff's autism limited her ability to plan ahead, caused her to put herself in dangerous situations, and that she experienced episodes of agitation, stress, and anxiety during social encounters, Tr. 663-65, 690-93, but the ALJ found this inconsistent with Plaintiff's normal presentation in academic reports. Tr. 25-26. The ALJ cited reports that Plaintiff: (1) maintained "80%-100% [attendance] in regular class;" (2) performed well cognitively and socially; (3) was described as "slightly unusual" but was engaged, smiled, and "presented as a friendly and socially oriented" child; (4) and demonstrated an easygoing temperament, the ability to learn and use new skills, a good sense of humor, and close family relationships. Tr. 702, 924-26. Thus, marked limitations are not consistent with Plaintiff's

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 6

presentation in other settings. The ALJ's finding regarding consistency are thus supported by substantial evidence.

Based on the foregoing, the ALJ's findings under the appropriate regulations are legally sufficient and supported by substantial evidence.

**C. The ALJ Did Not Err in Evaluating Lay Witness Testimony.**

Under regulations applicable to this case, an ALJ must consider "all of the available evidence" in evaluating the intensity and persistence of symptoms, including evidence from "medical sources and nonmedical sources" about the effect of a Plaintiff's symptoms. 20 C.F.R. § 416.929(c)(1); see also SSR 16-3p (requiring ALJ's to consider other evidence such as nonmedical sources to evaluate symptoms). However, an ALJ is not required to articulate how evidence from nonmedical sources was considered using the requirements applicable to evaluations of medical opinions. *See* C.F.R. § 416.920c(d). Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff's father, J.C., testified Plaintiff was "very smart" but a little slow on "expressing things as she learns them" and "social cues as well as day-to-day things." Tr. 41. He stated that Plaintiff's mental processing speed was reduced, she experienced memory problems, and she had diminished concentration skills. Tr. 41-44; s*ee e.g.*, Tr. 42 ("starts daydreaming and kind of loses where she is"); Tr. 43 (she uses a cell phone to play video games, and sometimes plays badminton or frisbee with J.C.); Tr. 44 ("she can have short conversations with me, not extended conversations"). He explained Plaintiff needed reminders and encouragement to complete basic daily activities, and she experienced chronic academic difficulties. Tr. 41-44; see e.g., Tr. 41 (difficulty getting dressed and staying on task); Tr. 42 (needs reminders to shower and brush her

1  teeth); Tr. 43-44 (needs help "doing laundry and cleaning up her room and everything on her
2  own").

3        The ALJ observed "overall, the medical records and academic reports… do not fully
4  support the description of her symptoms or limitations." Tr. 25.  An ALJ may reject lay witness
5  testimony that is inconsistent with the objective evidence in the record.  *See Bayliss v. Barnhart*,
6  427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (holding
7  that inconsistency with the medical record is a germane reason for discrediting the testimony of a
8  lay witness). The ALJ noted despite J.C's allegations, the record indicated Plaintiff is pleasant
9  and cooperative, worked in small groups and communicated effectively, able to complete tasks
10  without becoming frustrated or overwhelmed, did not exhibit marked or extreme social
11  limitations, and was performing at or above academic standards across all academic areas. Tr. 25
12  (citing Tr. 524-25). She did not "exhibit behaviors that impeded her academic performance or the
13  performance of others, nor did she require "special in-class assistance, accommodations,
14  intensive special educational services, or full-time special classroom settings." Tr. 25 (citing Tr.
15  540-48). She "performed well cognitively and socially," "was engaged, smiled, and presented as
16  a friendly and socially oriented child," and "demonstrated an easygoing temperament, the ability
17  to learn and use new skills, a good sense of humor, and close family relationships." Tr. 25.
18  (citing Tr. 924-26).

19        Plaintiff contends the ALJ erred by rejecting lay witness testimony as inconsistent with
20  the record when "medical providers and teachers during this period did not interact with
21  [Plaintiff] in person and when they did interact with her, it was for limited periods of time." Dkt.
22  11 at 13-14. Plaintiff argues "the ALJ did not consider the whole record" and "improperly
23  rejected probative evidence." Dkt. 18 at 9.  Plaintiff's argument sidesteps the fact that the ALJ

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 8

considered lay witness testimony and statements and cited medical exam findings as well as school records. This is the essence of the "whole child" analysis: considering not just one area of life such as home life, but the child's overall function across all of his activities.  SSR 09-1p. The ALJ explained despite Plaintiff's diagnoses, the record shows she functions at a level that is better than claimed. While the record is susceptible to more than one rationale interpretation, the Court cannot say the ALJ's findings are irrational or unsupported by substantial evidence.

Next, relying on *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996), Plaintiff argues the ALJ erred by rejecting the testimony of Plaintiff's grandmother, T.C., without comment. Dkt. 11 at 11; Dkt. 18 at 7. The Commissioner acknowledges the ALJ erred by failing to consider T.C's testimony but argues any error was harmless because "the grandmother's testimony was largely similar to the testimony by [J.C.], and the ALJ explained why he considered such testimony to be inconsistent with the longitudinal record." Dkt. 17 at *4.

An ALJ's error is harmless if it "was clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1169 (9th Cir. 2008) (internal citation omitted). In *Molina*, the Ninth Circuit reaffirmed the "long-settled rule that [courts] will not set aside the denial of a disability claim unless 'the Secretary's findings are not supported by substantial evidence in the record as a whole.'" *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985). In *Molina*, the Ninth Circuit found the ALJ erroneously failed to provide reasons for disregarding lay witness testimony. *Id*. at 1122. To determine whether the error was harmless, the court first found the lay witness testimony "described the same limitations" as the Plaintiff's own testimony and then found the ALJ rejected Plaintiff's testimony "based on well-supported, clear and convincing reasons." *Id*. The court noted "the

ALJ's reasons for rejecting [Plaintiff's] testimony apply with equal force to the lay testimony," and held that the ALJ's failure to give germane reasons for rejecting the lay witness testimony was harmless. *Id*.

Here, T.C. stated Plaintiff struggles with "communicating and dealing with people" as well as daily life skills and tasks. Tr. 47. She testified Plaintiff "has a lack of focus" and often daydreams, but is "very, very smart" and "is in the gifted program for her ability, for her academics." Tr. 49. She reported Plaintiff "gets really frustrated and she shuts down" and is "kind of always the outcast" in social settings. Tr. 49-50. She explained the Plaintiff "gets overloaded, and she'll completely shut down" "three to four times a week." Tr. 54. And she testified Plaintiff needs help with activities such as putting her clothes on, brushing her teeth, and avoiding distractions. Tr. 54-56. T.C's testimony regarding Plaintiff's limitations thus mirrors J.C's testimony. *Compare* Tr. 41-44 (J.C. testimony) *with* Tr. 45-59 (T.C. testimony).

As discussed above, the ALJ properly discounted J.C's testimony. As the Court found in *Molina*, "where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not 'clearly link his determination to those reasons.'" 674 F.3d at 1121 (citation omitted). The Court accordingly concludes the ALJ's failure to address T.C's lay witness testimony was harmless error.

Plaintiff argues for another interpretation of the evidence but does not establish that the ALJ erred in fact or law in analyzing the evidence. The ALJ, not this court, is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Richardson v. Perales*, 402 U.S. 389, 400 (1971). Here, the ALJ's interpretation of the evidence is supported by the record and there is no error.

### D. The ALJ Did Not Err in Evaluating the State Agency Evidence.

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 10

In challenging the ALJ's analysis of the medical evidence, Plaintiff makes a conclusory one-paragraph challenge, within the section related to Dr. Que's opinion, to the ALJ's assessment of opinions from State Agency Consultants, arguing that neither consultant "considered probative evidence." Dkt. 11 at 10.  Relying on *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), Plaintiff contends "the contrary opinion of a non-examining medical expert may constitute substantial evidence only if it is consistent with other independent evidence in the record." *Id*.  To preserve an issue, a party must have "contentions… accompanied by reasons" and "a bare assertion of an issue does not preserve a claim." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003).  Plaintiff does not engage with the ALJ's reasoning of these opinions, so the Court need not consider Plaintiff's cursory argument.  Nonetheless, the ALJ found the Agency Consultants opinions supported by medical treatment notes and consistent with academic records that "describe mostly normal social abilities and academic progress that did not require intensive educational supports." Tr. 27 (citing Tr. 524-25, 540-48, 676-79, 699-701, 924-25). Plaintiff's conclusory reference to error fails to establish a meaningful challenge to the ALJ's analysis.  The Court thus finds that the ALJ properly found these opinions consistent with other independent evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 24th day of January, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge